DISTRICT JUDGE RAPKOCH
specially concurring in part and dissenting in part.
I concur in the majority opinion on Issue I, that state employees retiring before the effective date of Chapter 823, 1991 Laws of Montana, did not have a contractual right to continued exemption from taxation of their state retirement benefits.
I also agree that the provision of Chapter 823 phasing out the $3600 exemption does not violate 4 U.S.C. § 111 (1966).
Nor do I disagree with the majority that the adjustment contained in section 5 of Chapter 823 constitutes discriminatory taxation and therefore violates 4 U.S.C. § 111 (1966).
It is, however, my opinion that the adjustment payment provision is not severable from the rest of Chapter 823, and therefore, I dissent from the majority’s opinion on that point.
Section 20 of Chapter 823 is the severability provision here. The incorporation of that provision raises a presumption that the Legislature would have enacted the law without its invalid portions. Williams v. Standard Oil Co. (1929), 278 U.S. 235, 241-42, 49 S.Ct. 115, 116-17, 73 L.Ed. 287; State v. Holmes (1935), 100 Mont. 256, 291, 47 P.2d 624, 636; Ingraham v. Champion Int’l. (1990), 243 Mont. 42, 49, 793 P.2d 769, 773.
That is a rebuttable presumption though, and a weak one at that; rebuttable by the nature of the statute being considered: its purpose manifested by its provisions before severance as compared to its apparent purpose, as manifested by the provisions remaining after amputation. Can it be said that the purpose is the same after surgery as it was before?
The majority cites and quotes Montana Automobile Association v. Greely (1981), 193 Mont. 378, 399, 632 P.2d 300, 311 as follows:
A statute “is not destroyed in toto because of an improper provision, unless such provision is necessary to the integrity of the statute or was the inducement to its enactment.” If, when an unconstitutional portion *144 of an act is eliminated, the remainder is complete in itself and capable of being executed in accordance with the apparent legislative intent, it must be sustained. [Citation omitted; emphasis added].
This cannot be done here. “Apparent legislative intent” must be that intent manifested by the language of the statute before severance. It is true that neither the income tax provisions nor the equalization parts are not themselves destroyed or affected by striking the adjustment provisions. But the former cannot in this case be considered separate and apart from the amputated adjustment provision. And “amputated” is the right word. What remains and will be enforced under the majority opinion will not be the same as what clearly appears to be the intent of the Legislature in the original enactment. The Legislature did not, in enacting Chapter 823, set out to do no more than equalize the income tax on all retirees. It went on and set out, by the adjustment provision, to remove or lessen that impact on resident Montana retirees.
The general statement of the severability rule in Greely is an accurate statement. Portions of a statute are severable if:
(1) the invalid part is not necessary to the integrity of the statute; or
(2) the invalid part was not the inducement to its enactment;
(3) the remainder of the statute is complete in itself; and (conjunctive)
(4) the remainder is capable of being executed in accordance with the apparent legislative intent. Greely, 632 P.2d at 311.
I submit that the surgery here performed on Chapter 823 fails to meet condition 1 above in that sections 4 and 5, the adjustment provisions, are necessary to the integrity of the entire Chapter 823 as originally enacted. It is correct that the equalization provisions may be imposed and the exemption given effect without the adjustment to income for Montana resident retirees. But what would then be imposed and given effect would be a law completely different from what is clearly intended in the original act. It may even be a better law, but that is not our business; such would be judicial legislation.
It also seems that the adjustment provision is part of an enactment that is a byzantine effort to avoid Davis v. Michigan Department of Treasury (1989), 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891. I stand in awe and admiration of such effort, but we are subject to 4 U.S.C. § 111 (1966) and Davis and must apply logic to the premises therein set forth. I, therefore, believe that the adjustment provision is an inseparable inducement to the enactment of Chapter 823, thereby failing the second condition above.
*145 The remainder of the statute, after eliminating the adjustment provision is complete in itself, but only in ¿¿self. It is not what the Legislature enacted or intended. There go conditions 3 and 4 above.
What remains after our decision is not, as stated ad nauseam above, capable of being executed in accordance with the apparent legislative intent. We cannot cut out a third of the legislation where that third completely changes the effect of the whole enactment and say that what is left is what the Legislature started with.
Greely is not on point. There the purpose of the Act was to regulate lobbying. The Legislature indulged in overkill by, for instance, defining the proscribed practice so a person of normal intelligence could not figure out what he could not do. Several sections were therefore held void; others, because the subject matter of some of the sections was not embraced in the title of the Initiative, contrary to Article V, Section 11, Clause 3, of the Montana Constitution.
This Court stated:
The Initiative, while being lengthy, is basically amendatory in nature. Its purpose was to expand Chapter 7, Title 5, of Montana’s Lobbying Act, to provide for the disclosure of money spent to influence action of public officials and to require elected officials to disclose their business interests. This purpose is not frustrated by our limitations of the Initiative. Even after our excisions, Chapter 7, Title 5, as amended by the Initiative is complete in itself and capable of being executed in accordance with the intention of the people of Montana. [Emphasis added].
Greely, 632 P.2d at 311-12.
The legislation there considered is of a different nature than Chapter 823, where the parts are meaningful only in internal conjunction with each other. The whole of Chapter 823 was enacted as a unit.
I must disagree with the view expressed that the legislative intent is clearly expressed in section 20, Chapter 823, which is the sever-ability clause, and provides that if a part of the Act is invalid, all invalid parts of the Act are severable, and valid parts remain in effect. This is not the legislative intent that is relevant here. In fact, it is not the legislative intent at all that the act is severable; the intent is that if the act is severable... By use of the word “if’ the Legislature recognizes the fact that severance, or declaration of severability is a judicial act, not legislative. If the Legislature had intended the severed statute, it could and should and would have legislated accordingly.
*146 This may, as is stated and shown earlier, raise a presumption that the Legislature would have enacted the law without its invalid portions being incorporated. But that presumption is, I believe, a rebuttable presumption, here rebutted. Also, the inclusion of a sever-ability provision is to seek a judicial act. Before it can be given effect, the judicial branch must do the severing.
The relevant intent for the judiciary to look at in considering severability is not the legislative intent to provide for severability, but the legislative intent in enacting the statute, the purpose of the statute, as indicated by its provisions. The intent to make portions severable is an interim intention, a procedural means, not the end. This Court has stated:
The inclusion of a severability clause in the Initiative is an indication that its drafters and the voters desired this judicial policy [the severability rule] to be applied to the Initiative. [Emphasis added].
Greely, 632 P.2d at 311.
Lastly, section 20, Chapter 823, reads as follows:
Severability. If a part of [this act] is invalid, all valid parts that are severable from the invalid part remain in effect. If a part of [this act] is invalid in one or more of its applications, the part remains in effect in all valid applications that are severable from the invalid applications. [Emphasis added].
That language, I think, is clear. That section speaks not of physical parts of provisions. It speaks of applications of those parts. To apply the equalization portions without the adjustment portion is to apply the former portions at a divergence of 180 degrees, more or less, from the application intended by the Legislature as the act is presently constituted. A severability clause is an appeal to the judiciary.
It is, therefore, my opinion that the whole of Chapter 823 is invalid and the adjustment provisions are not severable.
JUSTICE TRIEWEILER joins in the foregoing concurrence and dissent.